**SO ORDERED.**

**SIGNED this 12 day of January, 2012.**



_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

SWARTVILLE, LLC

    DEBTOR

CASE NO.

11-08676-8-SWH

### MEMORANDUM OPINION REGARDING MOTION TO DISMISS

The matter before the court is the motion of TD Bank, N.A. to dismiss or convert the debtor's chapter 11 case as a bad faith filing. A hearing took place in Raleigh, North Carolina, on December 20, 2011. For the reasons that follow, the court denied the motion in an order entered January 4, 2012.

### Background

Swartville, LLC filed a petition for relief under chapter 11 of the Bankruptcy Code on November 14, 2011. Prior to this filing, the debtor executed a promissory note in favor of TD Bank in the original principal amount of $1,615,000. The note is guaranteed by the debtor's three members, Joel Tomaselli, Glenn Garrett, and Garry Silivanch, and is secured by approximately 90 acres of the debtor's real property in Castle Hayne, North Carolina (the "Subject Property"). The debtor intended to sell the Subject Property after preparing it for development, but encountered

financial troubles upon the recent decline in the real estate market and did not make improvements to the property. As a result, the debtor defaulted on the note and TD Bank made a written demand on the debtor for payment on October 12, 2011. Rather than initiating a lawsuit against the debtor for collection of the note or a foreclosure proceeding against the Subject Property, TD Bank filed a lawsuit against the guarantors in New Hanover County Superior Court on October 18, 2011. Soon after, the debtor filed its petition on November 14, 2011, and TD Bank filed the present motion to dismiss or convert the debtor's case on November 28, 2011.

In addition to the Subject Property, the debtor owns approximately 3.29 acres of other real property in Castle Hayne, which is unencumbered and is valued at $133,351.20 on the debtor's Schedule A. This second parcel is not adjacent to the Subject Property, but is located nearby. The debtor's Schedule F lists both insider and non-insider non-priority unsecured creditors with claims totaling $811,404.74. All three guarantors are listed on Schedule F as the holders of non-priority, unsecured claims.

The debtor filed its plan of reorganization on November 17, 2011, and proposes to surrender the Subject Property to TD Bank in satisfaction of the debt under the note, which had a balance of approximately $1,624,530 as of the petition date. Should the court determine that the value of the Subject Property is less than the amount of TD Bank's claim, the plan provides that the bank may seek payment of any deficiency from the debtor's equity holders, pursuant to their joint and several guaranty agreements only, and expressly does not treat such deficiency as an unsecured claim.

Discussion

Under § 1112(b) of the Bankruptcy Code, "the court shall convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under [chapter 11], whichever is in the best interests of

creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). The Fourth Circuit has held that "a generalized 'good faith filing' requirement appears implicit in § 1112(b)." Carolin Corp. v. Miller, 886 F.2d 693, 699 (4th Cir. 1989); see also In re Premier Auto. Servs., Inc., 492 F.3d 274 (4th Cir. 2007) (holding that the absence of good faith in filing a chapter 11 bankruptcy petition is cause for dismissal). Whether a case may be dismissed for lack of good faith is determined by application of a two-part test derived from Carolin: the movant must demonstrate "*both* objective futility and subjective bad faith." Carolin at 700.

TD Bank seeks dismissal or conversion of the debtor's case, contending that the debtor filed its chapter 11 petition in bad faith, its sole purpose being to benefit the guarantors of the note to TD Bank. According to the bank, the debtor owns essentially a single asset, has no employees, and has no operations. The bank contends that the purpose of the debtor's bankruptcy filing was to force the bank to take back its collateral, thereby subjecting the bank to a reduction in the debt by virtue of the court's valuation of the collateral, and preventing the bank from obtaining and collecting on the full amount of judgments against the guarantors to be obtained in state court. As such, it is TD Bank's position that the guarantors effectively seek to rewrite their guaranty agreements through the bankruptcy process by forcing the bank to seek redress first from the Subject Property, and contend that such a purpose and result is improper and evidence of a lack of good faith. In addition, TD Bank asserts that the debtor's choice to pay its counsel, through guarantor advances, more than the

3

amount proposed for distribution to non-insider creditors pursuant to the plan constitutes further evidence of the debtor's bad faith and lack of a legitimate chapter 11 purpose.[1]

The debtor contends that it could have proceeded with alternative courses of action in or out of bankruptcy, and the fact that it chose bankruptcy is not bad faith, but rather a permissible exercise of its business judgment. According to the debtor, even though a foreclosure action had not been initiated, the bankruptcy petition was filed against the backdrop of TD Bank's demand letter, the debtor's state of financial distress, and the debtor's desire to preserve assets for the benefit of all creditors. In addition, the debtor asserts that it has not requested extension of the automatic stay to the guarantors and therefore did not file the petition to impede the state court litigation against the guarantors, nor has it sought release of the guarantors in the plan. Finally, the debtor asserts that its proposed plan may still be modified, as appraisals on both sides suggest that the debtor has equity in the Subject Property.

The first prong of the Carolin test requires the court to determine whether any possible reorganization of the debtor is objectively futile. After evaluating the debtor's proposed plan of reorganization, the court finds, and TD Bank concedes, that it is possible the plan could be confirmed as filed or with reasonable modification.[2] Further, in addition to the Subject Property, the debtor owns a second tract of property, which is unencumbered and therefore available to the debtor in its efforts toward reorganization. Notwithstanding the presence of such factors weighing

---

[1] Prior to filing the petition, the debtor's counsel was paid a retainer of approximately $31,182, of which $22,717.88 remains in escrow. Disclosure of Compensation of Atty for Debtor at 1. The retainer was funded by personal contributions from the debtor's members. Id.

[2] Although the question of whether the unsecured non-insider class is artificially impaired may arise, that potential issue is not before the court at this juncture, nor is it dispositive in the present inquiry, given the further factual development needed to assess this factor and the potential for plan modification.

against objective futility, TD Bank maintains that the objective futility prong of the Carolin test is so closely tied to the subjective bad faith prong that the two should essentially be considered together. Although the court acknowledges that "[e]vidence of subjective bad faith in filing may tend to prove objective futility, and vice versa," the court finds that in this case, the debtor's pursuit of bankruptcy protection is not objectively futile, as there appears to be a possibility of reorganization in some form. Id. at 701.

Because of the bank's assertion that subjective bad faith and objective futility may be inextricably intertwined in this case, the court will also evaluate the subject bad faith prong. As to the second prong of the Carolin test, although the movant has the initial burden of establishing cause to convert or dismiss a case, the debtor ultimately bears the burden of demonstrating to the court that the petition was filed in good faith. See Collier on Bankruptcy ¶ 1112.04[4], at 1121-22 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2009); In re Paolini, 312 B.R. 295, 305 (Bankr. E.D.Va. 2004). The court is satisfied that the debtor's purpose in filing the petition was not to abuse the bankruptcy system or impose hardship upon creditors, but rather to utilize the valuation process available under 11 U.S.C. § 506(b) and surrender property pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii). Although TD Bank takes issue with the proposed "dirt for debt" transfer, the debtor's choice to avail itself of this particular avenue of relief under the Bankruptcy Code does not constitute *per se* bad faith. Nevertheless, a valid purpose for reorganization is necessary in order to conclude that the debtor's petition was affirmatively filed in good faith. See NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.,) 384 F.3d 108, 129 (3d Cir. 2004) ("To be filed in good faith, a petition must do more than merely invoke some

5

distributional mechanism in the Bankruptcy Code. It must seek to create or preserve some value that would otherwise be lost - not merely distributed to a different stakeholder - outside of bankruptcy.).

A number of factors weigh against a finding of bad faith. The guarantors in this case will not be released from their obligations, nor have they sought extension of the protections of the automatic stay. TD Bank's collateral is not the debtor's only asset, in that the debtor owns an unencumbered property in addition to TD Bank's collateral, albeit a small property. At filing, the debtor did not have liquid funds available to pay bankruptcy counsel; rather, the retainer was paid through personal contributions of the debtor's members. In short, the facts and circumstances of this case do not present the sort of "smoking gun" that would be indicative of a debtor's bad faith, warranting dismissal of the case. See PNC Bank, N.A. v. Park Forest Dev. Corp. (In re Park Forest Dev. Corp.), 197 B.R. 388, 393-94 (Bankr. N.D. Ga. 1996) (denying motion to dismiss where the debtors' "dirt for debt" plan provided for retention of any excess value by the secured creditor, guarantors were not released, state court litigation was not enjoined, foreclosure was imminent, the debtors had liquid funds upon filing, and the evidence did not suggest the property would require an extensive marketing period.) At least one court has held that "[a] Chapter 11 debtor with debts that are guarantied by others is not precluded from proposing a Chapter 11 plan, simply because a distribution may reduce the liability of the guarantor."[3] Id. at 397.

A finding of bad faith not being supported by the advantageous effect of the plan on guarantors, the court looks to whether there is a valid purpose to the reorganization to determine the affirmative good faith of the debtor. In this case, if the debtor did not seek bankruptcy protection,

---

[3] However, the Park Forest court notes that "a plan cannot release the liability of a non-debtor party beyond the amount actually paid by the debtor."

TD Bank could proceed against the debtor in state court, obtain a judgment, and enforce the judgment against the debtor's unencumbered land with a resulting loss of equity for payment of other creditors. Filing for bankruptcy protection, however, preserves the unencumbered property for the benefit of the debtor's unsecured creditors. Although many of the unsecured creditors may be insiders of the debtor, the Code does not prohibit payment of insiders or preservation of property for the benefit of insider creditors. There is a valid reorganizational purpose in this case.

Accordingly, the court finds that the totality of the circumstances of this case do not suggest bad faith in the debtor's filing of its bankruptcy petition.

Based on the foregoing, the court denied TD Bank's motion to dismiss or convert the debtor's case.

**END OF DOCUMENT**