**SO ORDERED.**

**SIGNED this 17 day of August, 2012.**

                                               _Stephani W. Humrickhouse_
                                               **Stephani W. Humrickhouse**
                                               **United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

IN RE:

SWARTVILLE, LLC

    DEBTOR

CASE NO.

11-08676-8-SWH

**ORDER DENYING CONFIRMATION**

A hearing took place in Raleigh, North Carolina, on July 16, 2012, to consider confirmation of a plan of reorganization filed by the chapter 11 debtor, Swartville, LLC, as well as motions by T.D. Bank, N.A. for relief from the automatic stay and to convert the debtor's case.[1]

TD Bank objects to confirmation on several bases, however, in light of its rejecting ballot, the debtor's ability to proceed to cramdown under § 1129(b) presents a threshold issue to the court. TD Bank contends that the debtor cannot produce at least one accepting impaired class in satisfaction of § 1129(a)(10) and thus may not proceed to cramdown. The debtor maintains that the acceptance of Class 7 - General Unsecured Non-Insider Claims - satisfies that provision. However,

---

[1] The debtor's motion for valuation of the debtor's property was also calendared for hearing. Its determination is not necessary in light of the court's ruling.

TD Bank contests the status of Class 7 as a valid impaired accepting class and argues that it is not impaired as required by § 1124 of the Bankruptcy Code. A finding that the affirmative vote of Class 7 is insufficient to satisfy § 1129(a)(10) will effectively end the confirmation inquiry since there is no other available qualified accepting impaired class. Confirmation was taken under advisement and, on June 23, 2012, post-trial briefs were filed by the parties.

## BACKGROUND

The debtor, Swartville, LLC, is indebted to T.D. Bank, N.A., pursuant to a promissory note dated May 25, 2011, in the principal amount of $1,615,000, and secured by a lien on approximately 90 acres of the debtor's real property located at 317 Castle Hayne Road, Castle Hayne, North Carolina. The note is guaranteed by the debtor's three members, Joel Tomaselli, Glenn Garrett, and Garry Silivanch. On November 14, 2011, the debtor filed a petition for relief under chapter 11 of the Bankruptcy Code. On November 17, 2011, the debtor submitted a plan of reorganization. TD Bank filed a motion to dismiss the debtor's case on November 28, 2011, asserting that it had been filed in bad faith. The motion was denied by Order dated January 4, 2012, in which the court determined that neither subjective bad faith nor objective futility had been shown at that early stage of the case. An amended plan was filed by the debtor on April 30, 2012.

The debtor's plan provides for the treatment of three impaired classes[2] eligible for § 1129(a)(10) analysis:

- Class 4, TD Bank, N.A. in the amount of $1,624,530, which voted to reject the plan;

---

[2] Class 5, Insider Unsecured Claims, is an accepting impaired class, but is ineligible for § 1129(a)(10) analysis which excludes insider votes.

- Class 6, TD Bank's Deficiency Claim in an unknown and contingent amount, which did not file a ballot; and

- Class 7, General Unsecured Non-Insider Claims, which voted unanimously to accept the plan. Only one creditor, Mihaly Land Design, voted in this class, with a claim in the amount of $1,170.[3]

The debtor's proposed treatment for Class 4 includes two alternatives dependent upon the court's determination of the value of the property. If the value is determined to be greater than or equal to TD Bank's claim, the debtor will surrender the property to the bank in full satisfaction of its claim no later than 15 days following the Effective Date. Alternatively, if the value is determined to be less than TD Bank's claim, the debtor can choose one of the two following options: (a) pay the entire claim with interest only payments for 36 months, followed by principal and interest payments for 24 months, interest calculated at 4.25% per annum, or (b) surrender the property and pay the deficiency in Class 6 with equal quarterly payments over 5 years at 4.25% per annum. The debtor proposes to pay TD Bank's class 6 deficiency claim with 4.25% interest per annum, in 20 equal consecutive quarterly installments commencing in the quarter 30 days after the Effective Date for five years. Finally, the debtor proposes to pay the Class 7 general unsecured creditors in full within 60 days of the Effective Date.

      TD Bank filed separate objections to the debtor's proposed plan on November 20, 2011 and February 7, 2012.

---

[3] The debtor scheduled only four non-insider, unsecured, non-priority creditors whose claims total $8,901. No unsecured, non-priority claimants to be treated in Class 7 filed proofs of claim in the case.

DISCUSSION

Because of TD Bank's rejection of the plan, the debtor can only confirm the plan through the cram down provisions of §1129(b).  Pursuant to § 1129(b)(1),[3] the § 1129(a)(8) mandate that all impaired classes approve of a plan for successful confirmation is waived if there is at least one valid impaired class accepting the plan.  In the present case, the confirmability of the debtor's plan will hinge on whether or not this court determines that the accepting Class 7, consisting of general non-insider unsecured claims, is an accepting impaired class for §1129(a)(10) purposes such that it provides the debtor recourse to the "powerful remedy" of cramdown found in § 1129(b).  In re 266 Washington Assocs., 141 B.R. 275, 287 (Bankr. E.D.N.Y. 1992).

Section 1124 sets forth the standard for the determination of valid impairment of a class of claims.  A claim is unimpaired if the plan "leaves unaltered the legal, equitable, and contractual rights to which such a claim or interest entitles the holder of such claim or interest" or if the plan compensates the creditor for a past default. 11 U.S.C. § 1124.  Many courts have noted that "Congress define[d] impairment in the broadest possible terms." Matter of Madison Hotel Associates, 749 F.2d 410, 418 (7th Cir. 1984) (quoting In re Taddeo, 685 F.2d 24, 28 (2nd Cir. 1982); see also L & J Anaheim Assoc. v. Kawasaki Leasing Int'l, Inc., 995 F.2d 940, 942 (9th Cir. 1993) (finding the broad nature of the language of 1124 to be "well-established"); 7 Collier on Bankruptcy ¶ 1124.03, at 1124-7 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (stating that

---

[4] Section 1129(b)(1) reads, "Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

"any alteration of [the creditor's] rights constitutes impairment even if the value of the rights is enhanced") .

Notwithstanding the broad nature of the language of § 1124, two diverging approaches have emerged with respect to the application of the Bankruptcy Code's impairment standard to a class of claims that is only nominally impaired. Some courts have denied confirmation where the plan's proponents have "artificially impaired" a class in order to take advantage of the cramdown provisions of § 1129(a)(10). Artificial impairment, if recognized, may be found where a debtor deliberately "impair[s] a *de minimis* claim" solely for the purpose of achieving a forced confirmation over the objection of a creditor. In re Dunes Hotel Assocs., 188 B.R. 174, 184 (Bankr. D.S.C. 1995). Those courts that prohibit artificial impairment of claims perceive it to distort the concept of consensual reorganization underlying the regulations and processes embedded in the Bankruptcy Code. See, e.g., Washington Assocs., 141 B.R. at 287 (explaining that "the policy underlying 1129(a)(10) is that before embarking upon the tortuous path of cram down and compelling the target of cram down to shoulder the risks of error necessarily associated with a forced confirmation, there must be some other properly classified group that is also hurt and nonetheless favors the plan"); In re Windsor on the River Assoc. Ltd., 7 F.3d 127, 131 (8th Cir. 1993) (stating that "[t]he purpose of [1129(a)(10)] is to provide some indicia of support [for a plan] by affected creditors and prevent confirmation where such support is lacking"); In re Estate of LaRosa, 2009 WL 1172843 (Bankr. N.D. W. Va. Mar. 25, 2009). (noting that requiring the affirmative vote of one truly impaired creditor ensures that the plan "promotes negotiated, consensual reorganizations, and it prevents confirmation when adversely affected creditors determine it is in their best interest to oppose the proposed plan"). These courts require the debtor to demonstrate that the nominal impairment of a

class is necessary for "economical or other justifiable reasons," beyond the debtor's desire to have its proposed plan confirmed. In re W.C. Peeler Co., Inc., 182 B.R. 435, 436 (Bankr. D.S.C. 1995).

Alternatively, other courts have chosen not to recognize the concept of artificial impairment, pointing to the broad language of § 1124 and the discretion afforded to the debtor in proposing a successful plan. The Ninth Circuit's Bankruptcy Appellate Panel, in In re Hotel Assoc. of Tucson, noted

> We do not believe it is the bankruptcy court's role to ask whether alternative payment structures could produce a different scenario in regard to impairment of classes. Denying confirmation on the basis that another type of plan would produce different results would impede desired flexibility for plan proponents and create additional complications in the already complex process of plan confirmation.

In re Hotel Assoc. of Tucson, 165 B.R. 470, 475 (B.A.P. 9th Cir. 1994). Such courts rely on the statutory language of the Bankruptcy Code, and reason that there are ample protections for creditors built into the confirmation process, such that it is unnecessary to grant creditors additional substantive rights beyond those specified in the statute. See G-44 Collier on Bankruptcy 2.4.16, p.7.[5] Some of those protections include the agreement that "all plans must have been proposed in good faith and must provide each individual impaired and dissenting creditor with at least as much as they would have received in a Chapter 7 liquidation." Id.

The issue of artificial impairment is one that is highly contested, frequently litigated, and to date, unresolved by the Fourth Circuit. Although the Fourth Circuit described the issue in In re Schwarzmann, it ultimately resolved the case's central issue on alternate grounds. In re Schwarzmann, No. 95-2512, 1996 U.S. App. LEXIS 31262 at *9 (4th Cir. Dec. 6, 1996) (unpub)

---

[5] App. Pt. National Bankruptcy Review Commission Final Report, Bankruptcy: The Next Twenty Years (October 20, 1997).

("We need not decide whether the vote of an artificially impaired class to accept a plan counts under § 1129(a)(10) because the impairment to CDC's claim is not artificial or insignificant"). However, courts within the circuit that have speculated on the Fourth Circuit's position on artificial impairment opine that, in light of the Fourth Circuit's treatment of artificial *classification* in Bryson,[6] it appears likely that the Court would find artificial *impairment* similarly impermissible. In re Bryson Properties, 961 F.2d 496 (4th Cir. 1992), cert denied, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992). See In re Dunes, 188 B.R. at 186 (noting that the Fourth Circuit Court of Appeals likely would join the Eighth Circuit's condemnation of artificial impairment schemes designed to engineer technical compliance with 1129(a)(10)); In re W.C. Peeler Co., Inc., 182 B.R. at 437 (explaining that Bryson "indicates that the court anticipates something more than a literal reading of the Code's definition of impairment," by noting the Bryson court held that priority tax claims cannot constitute a valid impaired accepting class and that tax claimants should not be permitted to "'bind other *truly impaired* creditors to a cramdown,'" suggesting a contrast between those classes that are "truly impaired" and those that are nominally impaired (quoting Bryson, 961 F.2d at 501 n.8)).

Other courts tackle the artificial impairment issue by considering it as part of the good faith analysis required by § 1129(a)(3). When a debtor "proposes some insignificant impairment to a class of creditors in [an] effort to obtain a cramdown plan of reorganization over the objection of truly impaired creditors in an attempt to circumvent the purpose of § 1129(a)(10)," it has failed its duty to act in good faith. In re Estate of LaRosa, 2009 WL 1172843. These courts find that a good faith analysis best protects the debtor's discretion in composing a plan most likely to result in a

---

[6] In Bryson, the Fourth Circuit held that separate classification of similar claims is prohibited where such classification is motivated to secure the vote of an accepting impaired class of claims under § 1129(a)(1)).

successful reorganization, but provides an avenue of redress for the creditor, who must be protected from clear abuses of such discretion.

The Ninth Circuit Bankruptcy Appellate Panel addressed the issue of such abusive impairment in In re L & J Anaheim Assocs., 995 F. 2d at 943 n.2, by employing a good faith analysis

> L & J, citing no authority, contends that the general rule should not apply where it is used abusively, as where the plan proponent enhances its own position, then attempts to use this fact to show impairment and so cram down the rest of the creditors. We believe, however, that abuses on the part of a plan proponent ought not affect the application of Congress's definition of impairment. The bankruptcy court can and should address such abuses by denying confirmation on the grounds that the plan has not been "proposed in good faith." 11 U.S.C. § 1129(a)(3).

This court is persuaded by the position espoused by courts who evaluate the significance and degree of impairment in the context of a good faith analysis required under § 1129(a)(3).

TD Bank has renewed its argument that the debtor's plan was not proposed in good faith, as it believes the plan constitutes an improper attempt to limit the liability of the guarantors to TD Bank, rather than a legitimate effort to protect the interests of creditors. See In re North Vermont Assocs., LP., 165 B.R. 340, 342 (Bankr. D.D.C. 1994) (denying confirmation where the bankruptcy case had been filed solely to "protect the guarantors and their indemnitors"). TD Bank also notes the artificial impairment of Class 7, the general unsecured claims, as evidence of the debtor's failure to propose a plan in good faith as required by § 1129(a)(3). The debtor, in turn, argues that it proposed the amended plan in good faith in satisfaction of the requirements of the Bankruptcy Code. The debtor notes that it is well-established that a debtor is permitted to "avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy law rights," and that taking advantage of the protections within the Code does not constitute bad faith. In re PPI Enters.,

8

Inc., 228 B.R. 339, 347 (Bankr. D. Del. 1998). The debtor also contends that there is a business justification for impairment of Class 7: lack of funds in the debtor's coffers.[7]

The proponent of a plan "has the burden of establishing by a preponderance of the evidence that the plan complies with the statutory requirements for confirmation of § 1129(a)" including § 1129(a)(3). In re Atrium High Point Ltd. P'ship, 189 B.R. 599, 609 (Bankr. M.D.N.C. 1995). TD Bank has contested the debtor's good faith since the initiation of this case. Although at the commencement of the debtor's case, this court rejected TD Bank's good faith challenge to the debtor's filing, the court now finds that the debtor has failed to carry its burden at the confirmation stage.

This court's denial of TD Bank's earlier motion to dismiss hinged on an application of the stringent standard for a bad faith filing set forth in Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir. 1989), the movant must show both subjective bad faith and objective futility under § 1122. The Carolin standard does not govern the present analysis pursuant to § 1129(a)(3). See, e.g., Pac. First Bank v. Boulders on the River, Inc. (In re Boulders on the River, Inc.), 164 B.R. 99, 103 (9th Cir. BAP 1994) (recognizing the "legal distinction between the good faith that is a prerequisite to filing a Chapter 11 petition and the good faith that is required to confirm a plan"). As compared to the good faith filing inquiry under § 1122, the court's consideration of a debtor's good faith under § 1129(a)(3) is more "narrowly focused, and tests directly whether the debtor's conduct in formulating, proposing and confirming a plan displays the requisite honesty of intention." 7 Collier on Bankruptcy ¶ 1112.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

---

[7] The debtor's monthly report for June 2012 indicates cash on hand at the end of the month in the amount of $181.45.

While the term "good faith" remains undefined by the Bankruptcy Code, courts have interpreted the § 1129(a)(3) requirement as mandating a "reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." McCormick v. Banc One Leasing Corp. (In re McCormick), 49 F.3d 1524, 1526 (11th Cir. 1995). The court's evaluation of the probability of a successful reorganization must be "viewed in light of the totality of the circumstances surrounding confection of the plan." Matter of Madison Hotel Assocs., 749 F.2d at 424-25.

When the plan is read as a whole, and then more specifically as to its treatment of the general unsecured class, the court must conclude that it has not been filed in good faith. Of vital importance is the fact that for all intents and purposes, this is a two-party controversy. The court is not so naive as to ignore the fact that many chapter 11 cases are instigated by, heavily involved in, and ultimately resolved around, the dispute between a debtor and its secured creditor. But the Bankruptcy Code demands that some other class of creditors which will not be paid according to existing contractual terms accept its treatment before the secured creditor can be forced to participate in the confirmation process as a means to that resolution.

Just how much of a two party dispute exists in this case is compelling. The debtor listed only four non-insider unsecured creditors on its Schedule F and those creditors' claims totaled only $8,901. No non-insider unsecured creditors filed proofs of claim in the case and only one non-insider unsecured claim filed a ballot. That creditor, Michaly Land Design, has a claim in the amount of $1,170, which by all conceptions of valuation, is a relatively small claim. But for the accepting vote of that one very small claim, the debtor would have no basis upon which to request the court consider cram down of its substantial secured creditor.

The debtor's proposed treatment of that small creditor, and the other approximately $8,000 of claims in Class 7, is to pay them in full within 60 days of the Effective Date. The delay in payment is proposed notwithstanding the emphatic and clear testimony of the debtor's manager that the claims in Class 7 could be paid immediately. The fact that the debtor only has $181.45 in its DIP account, although argued by the debtor to constitute a business reason for the delay in payment, is not relevant. The debtor will not pay the Class 7 claims on the Effective Date or 60 days from the Effective Date. The guarantors will be paying those claims, just as they have stated that they will be paying the Class 6 deficiency claim of TD Bank. No evidence was presented by the debtor to explain what was expected to happen during the 60 days after the Effective Date that would either allow the debtor itself to pay the Class 7 claims or make it easier for the guarantors to pay those claims on the debtor's behalf. This court is left with the inescapable conclusion under these circumstances that the impairment to Class 7 is indicative of bad faith. See, e.g., In re Hotel Assocs. of Tucson, 165 B.R. at 475 (finding that "impairment in an attempt to gerrymander a voting class of creditors is indicative of bad faith"); In re Village at Camp Bowie I, L.P., 454 B.R. 702, 703 (Bankr. N.D. Tex. 2011) ("[I]f the Plan is to fail confirmation due to artificial impairment, it must be because the Debtor did not propose the plan in good faith as required by section 1129(a)(3)"). Although the debtor can and should avail itself of the protections built into the Bankruptcy Code, it may not distort the carefully balanced provisions through overreaching.

As the debtor has failed to carry its burden to demonstrate compliance with the applicable provision of § 1129(a), its plan shall not be confirmed. TD Bank's motions for relief from stay and conversion will be re-calendared for hearing.

**SO ORDERED**.

**END OF DOCUMENT**