**SO ORDERED.**

**SIGNED this 29 day of November, 2012.**

*Stephani W. Humrickhouse*
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

SWARTVILLE, LLC

      DEBTOR

CASE NO.

11-08676-8-SWH

### ORDER DENYING MOTION TO CONVERT OR DISMISS AND DENYING OBJECTION TO AMENDED PLAN

The matters before the court are the motion of TD Bank, N.A. to convert or dismiss the debtor's chapter 11 case pursuant to 11 U.S.C. § 1112(b), as well as TD Bank's objection to the "amended plan" filed by the debtor on September 24, 2012, pursuant to which TD Bank contended that dismissal is required. A hearing took place in Raleigh, North Carolina, on October 10, 2012. For the reasons that follow, the court will deny the motion to dismiss or convert and deny the objection to the plan.

### BACKGROUND

Swartville, LLC filed a petition for relief under chapter 11 of the Bankruptcy Code on November 14, 2011. Prior to this filing, the debtor executed a promissory note in favor of TD Bank in the original principal amount of $1,615,000. The note is guaranteed by the debtor's three

members, Joel Tomaselli, Glenn Garrett, and Garry Silivanch, and is secured by approximately 90 acres of the debtor's real property in Castle Hayne, North Carolina (the "Property"). The debtor intended to sell the Property after preparing it for development, but encountered financial troubles upon the decline in the real estate market, and did not make improvements to the property. The debtor subsequently defaulted on the note and on October 12, 2011, TD Bank made a written demand on the debtor for payment.

Instead of initiating a lawsuit against the debtor for collection of the note or a foreclosure proceeding against the Property, TD Bank filed a lawsuit against the guarantors in New Hanover County Superior Court on October 18, 2011. The debtor then filed a petition under Chapter 11 on November 14, 2011, in which it checked the box identifying itself as a small business debtor.

The debtor filed its Chapter 11 plan on November 17, 2011. On March 8, 2012, TD Bank filed a motion to convert or dismiss under 11 U.S.C. § 1112(b). The debtor amended the plan on April 30, 2012. The court held a hearing to consider confirmation of the amended plan on July 16, 2012, and an order denying confirmation was entered on August 17, 2012. The court denied confirmation because the amended plan, when read "as a whole, and then more specifically as to its treatment of the general unsecured class, [caused the court to] conclude that it ha[d] not been filed in good faith." In re Swartville, Case No. 11-08676-8-SWH (Order Denying Confirmation, Aug. 17, 2012) at 10.

The debtor thereafter retained new counsel, who appealed the court's denial of confirmation.[1] On September 24, 2012, the debtor filed a second amended Chapter 11 plan (hereinafter the "Second

---

[1] The appeal, filed on August 31, 2012, is pending before the district court for the Eastern District of North Carolina.

Amended Plan"). TD Bank filed an objection to the Second Amended Plan on October 1, 2012, on grounds that the plan was outside filing deadlines applicable to the debtor as a small business debtor. The debtor then filed, on October 9, 2012, an amendment to its petition in which it changed its designation to state that it is not a small business debtor as defined in 11 U.S.C. § 101(51D).

TD Bank's objection to the Second Amended Plan and the debtor's amendment to its designation were addressed during the hearing on October 10, 2012, along with TD Bank's motion to convert. At the time of the hearing, the bank argued that cause existed and that dismissal was most appropriate; however, on November 5, 2012, while the motion and the bank's objections were under advisement, TD Bank filed a supplement and amendment to the motion. TD Bank now contends that the case should not be dismissed, and that conversion to a case overseen by a chapter 7 trustee would most effectively serve the best interests of creditors.

## DISCUSSION

Section 1112(b)(1) provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause" unless the court determines that the interests of creditors and the estate are best served by the appointment of a trustee or examiner. The starting point is, of course, the court's assessment of whether "cause" exists to take any action at all. Without "cause," which is determined with reference to the nonexclusive factors listed in § 1112(b)(4), a bankruptcy court has no basis on which to take any action under § 1112(b)(1). If, however, cause does exist, the decision whether to convert or dismiss, or instead to appoint a trustee or examiner, is within the discretion of the court.

3

**I.    Significance of Debtor's Erroneous Designation as a Small Business Debtor**

The court turns first to TD Bank's objection to the Second Amended Plan as an "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." 11 U.S.C. § 1112(b)(4)(F). The bank argued in its objection that the debtor's filing of its Second Amended Plan fell "well outside the 300-day period within which the Debtor, as a small business debtor, was required to file its plan under 11 U.S.C. § 1121(e)(2)," such that dismissal was necessary on that ground. TD Bank's Objection to Debtor's Second Plan at 2 (hereinafter "TD Bank's Objection"). According to the bank, that deadline, if not extended before its expiration, is a "drop dead" deadline; likewise, because the debtor could not meet the 45-day deadline within which the plan must be confirmed, the Second Amended Plan was "not confirmable on its face" and was, in sum, "improperly and untimely filed and ineligible for further consideration." Id. at 4; see 11 U.S.C. § 1129(e); see also In re Castle Horizon Real Estate, LLC, 2010 WL 3636160 (Bankr. E.D.N.C. 2010) (dismissing case in which small business debtor's second amended plan was outside 300-day deadline).

In response to the bank's objection, the debtor promptly amended its petition to state that it was not a small business debtor. Fed. R. Bankr. P. 1009(a) (allowing a debtor to amend filings "as a matter of course at any time before the case is closed"). The amendment reflects the reality that the debtor is not, and never was, a small business debtor within the meaning of the Bankruptcy Code, given that § 101(51D) excludes from its definition any debtor "whose primary activity is the business of owning or operating real property or activities incidental thereto" and that is precisely what the debtor does. The debtor's current counsel represented that he was surprised by and had no

4

explanation for the erroneous designation, and no party in interest appears to have perceived the error.

Accordingly, the case has proceeded all along as a small business case. The key deadline uniquely applicable to small business debtors is the 300-day window in which a debtor must file a plan, which in this case was never extended and expired on September 10, 2012.[2] 11 U.S.C. § 1121(e)(2). Pursuant to those deadlines, the debtor did file its plan, which it subsequently amended, and the debtor then proceeded to confirmation within those deadlines. However, the court denied confirmation on August 17, 2012. A flurry of activity followed the denial of confirmation, including the debtor's retention of new counsel, appeal of the denial of confirmation, and the filing of the Second Amended Plan.

What the court must determine are the consequences that follow from the erroneous designation and the debtor's failure to satisfy the filing deadlines that accompanied it. The burden of establishing that the original designation was incorrect would appear to be best placed upon the debtor, as the proponent of the change. See In re Roots Rents, Inc., 420 B.R. 28, 40 (Bankr. D. Idaho 2009) (noting that the burden is on a debtor to establish the factual bases upon which a court should determine that the original designation was incorrect, which that debtor failed to do). The Roots Rents court also provided a thoughtful analysis of the interaction between the varying Bankruptcy Rules that apply in the context of the small business debtor designation, and concluded (correctly, in this court's view) that a debtor's "attempt to amend its designation almost a year after its bankruptcy filing, while in conflict with the goal of prompt resolution, would appear to be

---

[2] The related 45-day confirmation deadline set out in 11 U.S.C. § 1129(e) was extended a number of times, the last extension being to August 31, 2012.

5

allowed under the Rules." Id. at 39-40. While the rules do not preclude a debtor from changing its designation, the original designation still controls "unless and until the court enters an order finding that the debtor's statement is incorrect." Fed. R. Bankr. P. 1020(a).

That determination is a difficult one, because the confluence of the Bankruptcy Code and Bankruptcy Rules has prompted bankruptcy courts to handle mistaken designation and missed deadlines (separately and, as here, in combination) in widely divergent ways. Factors courts have considered include whether the debtor was so obviously in error that the designation should subsequently be considered void from its inception, such as in In re Coleman Enterprises, Inc., 275 B.R. 533 (BAP 8th Cir. 2002). The Coleman court held that the "[d]ebtors, by definition, were not small businesses at the time they filed their Chapter 11 petitions. They, therefore, did not satisfy the condition precedent to making a small-business election, making the election void *ab initio*." Id. at 535; see also In re Childs, 2010 WL 5108754 (Bankr. D. Utah 2010) (noting that despite Coleman being a pre-BAPCPA case, its reasoning still applied; because the debtor did not qualify as a small business debtor its original designation of itself as such was "a nullity").

Timing may matter, too, such as whether the debtor missed the deadline by a slight or significant amount of time. See In re Florida Coastal Airlines, Inc., 361 B.R. 286, 290 (Bankr. S.D. Fla. 2007) (allowing a debtor to file an amended plan nine days after expiration of 300-day deadline and analogizing to the relation back of amended pleadings under Rule 7015). Courts may consider the extent to which the plan that was filed outside the deadline is similar to or substantially different from an earlier filed and timely plan. Id.; see also Castle Horizon, 2010 WL 3636160 at *1-2 (dismissing debtor's second amended plan, which "differed significantly" from first plan, for that reason among others). Courts consider whether the debtor benefitted from the designation and/or

a creditor was prejudiced, such that an estoppel factor should apply. In Save Our Springs, the appellate court agreed with the lower courts that the debtor knew early in the case that its designation may have been incorrect, but moved to amend the petition only after the designation led to "adverse consequences" for the debtor: "That timeline shows the opportunistic behavior that judicial estoppel is designed to prevent."  Save Our Springs (S.O.S.) Alliance, Inc., 632 F.3d 168, 176 (5th Cir. 2011). Whether the debtor originally made its designation in good faith also is highly relevant to whether the debtor should be precluded from taking advantage of a change in designation.  See In re Barnes, 310 B.R. 209, 212-13 (Bankr. D. Colo. 2004) (pre-BAPCPA case in which the fact that debtor was not attempting to abuse system weighed in favor of allowing withdrawal of designation).

There is, at this point, no single dominate school of thought.  Of the factors that other courts have found persuasive, though, this court gives the most weight to these: Was the original identification of the debtor as a small business debtor erroneous, albeit in good faith?  And, did the debtor benefit from its mistake, or a creditor suffer prejudice, in any meaningful measure, such that principles of judicial estoppel should preclude the debtor from belatedly changing its status and treatment?

Each of these factors is, obviously, extremely fact-dependent.  A late-in-the-game inquiry may run counter to the goal of quickly processing small business debtors through the bankruptcy process, but that goal is not paramount.  As the Childs court observed, "considering that a debtor's status as a small business debtor is no longer an election, the Court does not find it prudent to require a debtor to be bound by rules that by definition are not applicable to that debtor."  2010 WL 5108754 at *5.  In this case, the court concludes that the debtor's original designation as a small

7

business debtor was made in good faith and in error, and is void. Moreover, the original designation has neither substantially benefitted the debtor nor prejudiced TD Bank to any meaningful extent,[3] such that there is no basis upon which the court should apply principles of judicial estoppel to preclude the debtor from proceeding as a debtor under Chapter 11. The court concludes that the debtor's failure to file the Second Amended Plan within the 300-day deadline is excusable; that dismissal is not required by § 1121(e)(2); and further that this error on the part of the debtor is not cause for dismissal or conversion. The debtor's amended petition stating that it is not a small business debtor will be approved.

## II.    Motion to Dismiss or Convert for Cause under § 1112(b)

The court now turns to the specifics of TD Bank's motion under § 1112(b), which was filed on March 8, 2012, and thus is reflective of the bank's concerns at that time: prior to the debtor's filing of its amended plan, and the court's denial of confirmation. In that motion, the bank argued that cause to dismiss or convert was established by 1) continuing loss to or diminution of the estate, in the form of the substantial post-petition professional fees that the Debtor is incurring without any apparent ability to repay them; 2) the lack of a reasonable likelihood of rehabilitation; and 3) the debtor's likely inability to confirm its plan or any other plan within applicable time deadlines.[4]

---

[3] For example, a primary benefit of designation as a small business debtor is the 180-day exclusivity period in which only the debtor may file a plan. 11 U.S.C. § 1121(e)(1). In this case, the debtor filed its plan three days after filing its petition. The relatively quick speed with which a small business case moves is another intended benefit of the designation; in this case, however, TD Bank has dictated the pace just as much as the debtor has, including its own motion to continue the confirmation hearing to facilitate its ability to conduct discovery and obtain an appraisal. Docket No. 40.

[4] TD Bank did not separately argue that the debtor's Second Amended Plan and its failure to comply with the small business deadlines fell afoul of § 1112(b)(4)(F) and established "cause" for that reason, but the argument is implicit.

In its amendment to the motion, filed on November 5, 2012, TD Bank argues that conversion, not dismissal, is in the best interests of creditors, citing the potential for liquidation of an unencumbered tract owned by the debtor, together with the debtor's recent acquisition of authorization to convey utility easements to the Cape Fear Public Utility Authority. With those developments in mind, TD Bank suggested that "[W]here there are unencumbered assets to be liquidated and a pending transaction to be closed," TD Bank argues, conversion to chapter 7 and the appointment of a chapter 7 trustee would "best suit the needs and interests of the Bank and other creditors in this particular case."

The debtor did not respond to the supplemental filing, but in its response to the original motion, the debtor argued that the Property had equity and was not declining in value, and that the debtor's plan was confirmable. (Obviously, the debtor's first amended plan was not confirmed; the court denied confirmation due to a bad faith component which came to light during the hearing. That component was unique to that plan and isolated in scope, but still sufficient to preclude confirmation.)

The first question before the court today, of course, is not whether conversion to chapter 7 is preferable to dismissal to serve the needs of the bank, other creditors, and the estate, but *whether there is cause to take any action*. Under § 1112(b) of the Bankruptcy Code, "the court shall convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under [chapter 11], whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1).

The court concludes that TD Bank has not established cause to convert or dismiss this case. The assertion that the debtor's professional fees are diminishing the estate (as fees tend to do in any and every bankruptcy case) has a tang of irony to it, given that TD Bank has vehemently and aggressively opposed most relief requested by the debtor, itself causing increased attorney's fees. While TD Bank is entitled to do that, it cannot plausibly assert that the professional fees the debtor accrues on its end of that process establish cause for dismissal or conversion. Nor is the court persuaded by the bank's arguments that the debtor lacks a reasonable likelihood of rehabilitation. Among the factors that previously weighed into the court's decision not to dismiss the debtor's chapter 11 early on in the case on bad faith grounds was the court's determination that there *was*, in fact, a valid purpose to the reorganization. As the court explained then:

> In this case, if the debtor did not seek bankruptcy protection, TD Bank could proceed against the debtor in state court, obtain a judgment, and enforce the judgment against the debtor's unencumbered land with a resulting loss of equity for payment of other creditors. Filing for bankruptcy protection, however, preserves the unencumbered property for the benefit of the debtor's unsecured creditors. Although many of the unsecured creditors may be insiders of the debtor, the Code does not prohibit payment of insiders or preservation of property for the benefit of insider creditors. There is a valid reorganizational purpose in this case.

In re Swartville, Case. No. 11-08676-8-SWH (Memorandum Opinion Regarding Motion to Dismiss) at pp. 6-7. Since that time, the debtor has made progress in establishing sewer service to the Property and in negotiating advantageous easements. Whether these developments will facilitate the debtor's ability to confirm its new plan remains to be seen, but what is readily apparent now is that they are not indicative of "cause" under § 1112(b). The Second Amended Plan is significantly different from the first amended plan in its proposed treatment of the secured creditor (pledge of $1 million in additional collateral, interest payments pending sale and three-year marketing period) and unsecured creditors (payment from sale of unencumbered property) and addresses the very

specific basis upon which the court previously declined to confirm the debtor's former plan. Earlier in this order, the court addressed TD Bank's arguments regarding the debtor's alleged inability to confirm its plan or any other plan within applicable time deadlines, and found them not persuasive.

For the foregoing reasons, TD Bank's motion to dismiss or convert the debtor's case, and its objection to the debtor's amendment of its petition to reflect that it is not a small business debtor, are **DENIED**. The debtor's amendment to petition, in which it states that it is not a small business debtor, is **APPROVED**.

## END OF DOCUMENT